UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                              :
JOHN DOE,                     :
                              :    Civ. No. 18-2958 (RMB)
        Plaintiff             :
    v.                        :    OPINION
                              :
DAVID ORTIZ, WARDEN,          :
                              :
        Defendant             :
_____  :

**BUMB, United States District Judge**

Plaintiff John Doe is a prisoner incarcerated in the Federal Correctional Institution ("FCI") in Fort Dix, New Jersey.[1] He filed this civil action challenging Warden David Ortiz's decision to deny him access to the Public Messaging Service TRULINCS, alleging violation of the Equal Protection Clause and the Administrative Procedures Act, 5 U.S.C. § 701 *et seq.* (Compl., ECF No. 1.) The Court dismissed the complaint without prejudice for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B); 1915A(b) and 42 U.S.C. § 1997e(c)(1). (Order, ECF No. 6.) On March 18, 2019, Plaintiff filed a document that he entitled "First Amended Petition for Declaratory and Injunctive Relief Pursuant to the Administrative Procedures Act and the Equal Protection Clause"

---

[1] By Order dated January 22, 2019, the Court granted Plaintiff's request to proceed under a pseudonym. (Order, ECF No. 6.)

("First Am. Compl.", ECF No. 10) which is before the Court for screening pursuant to 28 U.S.C. §§ 1915(e)(2)(B); 1915A(b) and 42 U.S.C. § 1997e(c)(1).

I. The First Amended Complaint

The Court recited the factual allegations in Plaintiff's original complaint in its Opinion dated January 22, 2019. (Opinion, ECF No. 5.) In short, Plaintiff challenges Warden David Ortiz's decision to exclude Plaintiff from using the Bureau of Prison's ("BOP") TRULINCS electronic messaging service. Plaintiff further alleges the following:

> Prior to 2014, BOP Program Statement 5265.13 governed the granting of access to the BOP e-mail function of TRULINCS. That particular Program Statement broadly restricted access to BOP e-mail to nearly all inmates convicted of a sex offense, regardless of the nature of their crime. Later, TRULINCS regulations were moved to the Program Statement covering the Trust Fund, PS 4500.11, most recently updated on December 16, 2016. See Attachment B.
>
> Regarding access to BOP e-mail, §14.9 of that policy states "inmates are only restricted from using TRULINCS … when absolutely necessary to protect the safety, security, or orderly operation of the correctional institution or the protection of the public or staff." See "Attachment B" p. 19. Specifically, regarding sex offenders, §14.9(a)(l) states "inmates whose offense conduct, or other personal history indicates a propensity to offend through the use of email jeopardizes the safety, security, or orderly operation of the correctional facility, or the protection of the public or staff, should be seriously considered for restriction." ID. That same section instructs

2

> that staff must conduct an individualized assessment of each inmate "to determine if their participation in the public messaging service poses a 'realistic threat' and must not be excluded based on generalized categories of previous conduct." ID. This is a much narrower restriction than previously employed and is a recognition by the BOP of the need to grant each inmate an individualized determination before excluding them from this feature of TRULINCS.

(First Am. Compl., ECF No. 10 at 6-7.)

Plaintiff restates the entirety of his original complaint with the following additions:

> IV.A.iii. – Defendant's Decision is Arbitrary and Capricious
>
> … Let this be clear. Preventing convicted sex offenders from gaining access to vulnerable minors is a legitimate government interest. But the sexual abuse of a child by Plaintiff is a crime that is literally impossible given the fact that he is incarcerated. There is no way, conceivable or otherwise, that plaintiff could come into contact with a minor while he is behind the walls of a federal prison. It is a crime that literally cannot be committed.
>
> Yes, inmates can still commit crimes while in prison. And yes, access to email could facilitate some of those crimes. But those are crimes such as wire fraud, or identity theft, or illegal sports betting, or the filing of fraudulent liens. Those are crimes that can be committed from afar, not crimes that require contact between people. There is no kind of "human error" possible that would make Plaintiff's previous crime possible under the present circumstances. Indeed, those who have a propensity to commit these type of "distance" offenses are routinely granted access to TRULINCS and such access is restricted only after that inmate commits

3

another offense. Restricting Plaintiff from TRULINCS because he <u>might</u> commit an impossible offense demonstrates just how arbitrary this restriction is.

iv - <u>TRULINCS Messages are Correspondence</u>:

Although TRULINCS is a system unique to the BOP, it is important to remember that "e-mail" is still exactly that; it is electronic mail. As such, inmates' ability to send and receive that kind of correspondence must be analyzed under existing standards of review.

The Supreme Court has been abundantly clear that prisons may restrict an inmates['] outgoing correspondence only to further an important government interest unrelated to suppression of expression and that limitations must be no greater than absolutely necessary or essential to protect that government interest. Procunier v. Martinez, 416 U.S. 396, 43-41 (1974) and Thornborough [sic] v. Abbott, 490 US 401, 409-12 (1987). See also Nasir v. Morgan, 350 F.3d 366, 371-2 (3rd Cir. 2003). Mail restrictions on incoming correspondence are valid only "if they are reasonably related to a legitimate pen[o]logical interest." Turner v. Safely, 482 US 78, 89 (1987).

Defendant's refusal to allow Plaintiff to send outgoing correspondence is greater than necessary to achieve the governmental interest of protecting the public. TRULINCS messages are not only fully monitored but also experience an approximately 90-minute delay between submission and delivery to the intended recipient. This allows ample time to review the message for inappropriate content or any attempt at the commission of a crime. This is decidedly more secure than sending outgoing correspondence via the US Postal Service. If an inmate wanted to commit an offense in a written letter, he could write the offending request, seal the envelope himself, ad the letter could leave this low-security facility without any review or

4

oversight at all. See 28 CFR § 540.14(c)(1) ("Outgoing mail from a sentenced inmate in a minimum or low security level facility may be sealed by the inmate and…is sent out unopened and uninspected.") This further demonstrates Defendant's denial of TRULINCS access to Plaintiff under the guise of "public safety" is arbitrary and capricious.

Moreover, any argument that Plaintiff's participation would result in the expenditure of scarce resources to monitor his participation is little more than a red herring. Defendant has assigned numerous BOP staff members to a communications monitoring center located in the operations center of FCI Fort Dix. This center is open daily and the officers assigned there are required to continuously monitor inmate telephone calls and TRULINCS messages. This is a monitoring scheme already in place and Plaintiff's participation in TRULINCS would in no way appreciably impact those officers' ability to perform their duties or budget necessary to man that center.

The exclusion of Plaintiff from participation in TRULINCS is not rationally related to the pen[o]logical interest of protecting the public. Preventing Plaintiff from sending outgoing correspondence through TRULINCS is overly burdensome and is greater than necessary to protect the public. This violates the standard of review governing inmate correspondence and further shows the arbitrary nature of Defendant's denial.

V – Conclusion

In the responses to Plaintiff's administrative remedy requests, Defendant does not articulate a rational reason for denying Plaintiff access to TRULINCS. At no time does he state how Plaintiff poses a threat to public safety or to the safe and orderly running of the institution. While it may be possible to infer an explanation from his responses, that is not

> the purpose of this civil action. Petitioner is not seeking clarification of Defendant's responses, he is seeking acknowledgment that Defendant actually gave none. Moreover, any kind of rationalization of the deficient responses would not satisfactorily demonstrate how Defendant's decision is anything other than arbitrary and capricious. Indeed, Defendant's "explanation" is "implausible in light of the circumstances." NVE, Inc., 436 F.3d at 190.

(First Am. Compl., ECF No. 10 at 7-25.)

## II. *Sua Sponte* Dismissal

"[A] pro se complaint, however inartfully pleaded, must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" Erickson, 551 U.S. at 94 (internal quotation marks omitted). "Court personnel reviewing pro se pleadings are charged with the responsibility of deciphering why the submission was filed, what the litigant is seeking, and what claims she may be making." See Higgs v. Atty. Gen. of the U.S., 655 F.3d 333, 339-40 (3d Cir. 2011) (quoting Jonathan D. Rosenbloom, Exploring Methods to Improve Management and Fairness in Pro Se Cases: A Study of the Pro Se Docket in the Southern District of New York, 30 Fordham Urb. L.J. 305, 308 (2002)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556.) Legal conclusions, together with threadbare recitals of the elements of a cause of action, do not suffice to state a claim. Id.

Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. If a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice but must permit the amendment. Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002).

II. DISCUSSION

    A. Equal Protection Claim

"The liberty protected by the Fifth Amendment's Due Process Clause contains within it the prohibition against denying to any person the equal protection of the laws." U.S. v. Windsor, 570 U.S. 744, 774 (2013). A plaintiff may bring a "class of one" equal protection claim by alleging she has been intentionally treated differently from others who are similarly situated, and that there is no rational basis for the difference in treatment. Village of

7

Willowbrook v. Olech, 528 U.S. 562, 564 (2000). The burden is on the plaintiff to negate "'any reasonably conceivable state of facts that could have provided a rational basis for the classification.'" Board of Trustees of University of Alabama v. Garrett, 531 U.S. 356, 367 (2001) (quoting Heller v. Doe by Doe, 509 U.S. 312, 320 (1993) (quoting FCC v. Beach Communications, Inc., 508 U.S. 307, 313 (1993)).

In dismissing Plaintiff's original complaint without prejudice, this Court dismissed Plaintiff's Equal Protection claim as follows:

> There is a rational basis upon which Defendant treated Plaintiff differently than the similarly situated inmates he identified. Plaintiff sent an email to his girlfriend to persuade her to allow Plaintiff to have sex with her ten-year-old sister. This behavior shows someone who might use TRULINCS to gain access to a minor through a personal relationship for his own sexual gratification. Defendant had a rational basis to deny Plaintiff TRULINCS access while permitting access to other sex offenders. See Hoffman v. Fed. Bureau of Prisons, No. 13-CV-852-GPM, 2013 WL 5529612, at *4 (S.D. Ill. Oct. 7, 2013) (finding the warden articulated reasons consistent with the BOP's program statement for his decision to deny the plaintiff TRULINCS access.)

(Opinion, ECF No. 5 at 11.)

Plaintiff has not presented any new facts in his First Amended Complaint that indicate there was no rational basis for the warden to treat Plaintiff differently from other inmates who committed

sex offenses.

Once again, Plaintiff asserts that he cannot use TRULINCS to commit a crime because TRULINCS is monitored and he cannot access a minor because he is in prison. Monitoring TRULINCS "imposes costs on the prison. And those costs increase when the users are likely to abuse the system because the prison must then scrutinize their emails more carefully." Sebolt v. Samuels, 749 F. App'x 458, 460 (7th Cir. 2018) reh'g denied (Feb. 20, 2019). A prisoner could use TRULINCS to establish a relationship for the purpose of obtaining access to a minor after release from prison. Prisons have a legitimate interest in limiting the costs of detecting unlawful communications between inmates and outsiders. See id. Plaintiff has not stated a Fifth Amendment equal protection claim.

B. First Amendment Claim

Plaintiff contends that preventing him from sending outgoing correspondence through TRULINCS is overly burdensome and is greater than necessary to protect the public. The Court construes this as a First Amendment claim. Whether a restriction on a prisoner's ability to send outgoing mail violates the First Amendment is a two-part test: (1) whether the regulation furthers an important interest or substantial government interest unrelated to the suppression of expression; and (2) that the regulation is no greater than necessary for the protection of that interest. Nasir v. Morgan, 350 F.3d 366, 374 (3d Cir. 2003) (citing Procunier

9

v. Martinez, 416 U.S. 396, 413 (1974)). Here, Plaintiff is not prohibited from sending any outgoing mail but only from using TRULINCS to do so electronically. Nonetheless, the Court will apply the standard of review relevant to First Amendment protection of outgoing mail.

"'Prison officials must show that a regulation authorizing censorship furthers one or more of the substantial government interests of security, order and rehabilitation.'" Nasir, 350 F.3d at 374 (quoting Martinez, 416 U.S. at 413.) Specific threats to security that justify restrictions on outgoing mail include escape, ongoing criminal activity, threats, and introduction of contraband. Id. (citing Thornburgh v. Abbott, 490 U.S. 401, 413 (1989)).

BOP Program Statement 4900.11, §14.9 System Access provides, in relevant part:

> 14.9 SYSTEM ACCESS
> It is important that staff ensure inmates are only restricted from using TRULINCS, or individual TRULINCS services, when absolutely necessary to protect the safety, security, or orderly operation of the correctional facility, or the protection of the public or staff.
>
> Due to the "self-service" format TRULINCS provides, all inmates who are physically capable of accessing a TRULINCS terminal should be provided access in all but limited cases. Public Messaging is the only exception to this approach, as it involves communication with persons in the community and the possibility of continuing criminal or other

prohibited activity that may jeopardize the safety and security of the institution.

a. **Program/Service Exclusions.** Inmates excluded from participation under this section are notified of the specific reason(s) by a written explanation of the decision, unless possessing such written information would threaten the safety of the inmate or other legitimate penological interest(s). If prohibited from possessing a copy of the written explanation, inmates remain entitled under the Freedom of Information Act (FOIA) to access this information from their central files, and must be provided reasonable opportunities to access and review such documents.

At the inmate's request, expense, and preparation of an envelope, staff may photocopy and mail the documents.

An inmate's exclusion from participation must be based on their individual history of behavior that could jeopardize the legitimate penological interests listed above. Inmates must not be excluded from participation based on general categorizations of previous conduct.

( 1) **Sex Offenders.** Inmates whose offense, conduct, or other personal history indicates a propensity to offend through the use of email or jeopardizes the safety, security, orderly operation of the correctional facility, or the protection of the public or staff, should be seriously considered for restriction.

As a method of identifying these inmates, staff responsible for local sex offender management should review inmates with SENTRY CMA Walsh Assignments of Certified, With Conviction, and No Conviction, to determine if their participation in the Public Messaging Service poses a realistic threat. TRULINCS automatically applies a temporary restriction

11

> on inmates' accounts with the above SENTRY CMA
> Walsh Assignments. These restrictions may be
> over-written when deemed appropriate by staff
> responsible for local sex offender management
> and approved by the Warden.
>
> Inmates may be permanently restricted from
> corresponding and/or communicating with
> individuals who are:
>
> Prior child or adult victims of sexual
> offenses committed by the inmate.
> Children who are being groomed by the inmate
> for sexual assault or other predatory behavior
> involving children and/or the caregivers of
> those children.
> Other sexual offenders.
> Any other contact with the general public
> deemed inappropriate by staff responsible for
> local sex offender management due to its
> association with the inmate's risk to engage
> in sexually offensive behavior.

(First Am. Compl., Ex. B, ECF No. 10 at 55-56.)

The BOP has a substantial government interest in restricting Public Messaging via TRULINCS "as it involves communication with persons in the community and the possibility of continuing criminal or other prohibited activity that may jeopardize the safety and security of the institution." BOP Program Statement 4900.11, §4.9. The threat of ongoing criminal activity is a substantial government interest recognized by the Supreme Court as justifying a restriction on outgoing prisoner mail. Thornburgh, 490 U.S. at 412.

Turning to the next step of the First Amendment test, the regulation must be no greater than necessary for the protection of

that interest. This is "not a least-restrictive means test[;]" instead, the restriction must be narrowly-tailored. Nasir, 350 F.3d at 375 (quoting Thornburgh, 490 U.S. at 411.)

BOP Program Statement 4900.11, §4.9 restricts TRULINCS access to those sex offenders "whose offense, conduct, or other personal history indicates a propensity to offend through the use of email." The staff responsible for identifying such inmates must review the inmates' history to determine if the inmates pose a realistic threat.

Here, the warden reviewed Plaintiff's history and found a propensity to offend by using email to arrange travel to engage in sex with minors, to correspond with a girlfriend to coerce her into letting Plaintiff engage in sex with her ten-year-old sister and found that Plaintiff's offense included possession of child pornography. Restricting TRULINCS access to persons with a propensity to offend through the use of email is no greater a restriction than necessary to protect the substantial government interest of protecting the public. See United States v. Crandon, 173 F.3d 122, 127 (3d Cir. 1999) (upholding three-year ban on Internet use without prior approval as condition of supervised release where the defendant used the Internet to develop an illegal sexual relationship with a young girl); United States v. Thielemann, 575 F.3d 265, 278 (3d Cir. 2009) (upholding as special condition of supervised release a ten-year Internet use

restriction, without prior approval of the U.S. Probation Office, on a defendant who possessed child pornography and encouraged another person, through an online chat, to have sexual contact with a young girl). Plaintiff fails to state a First Amendment claim.

C. <u>Administrative Procedure Act Claim</u>

A reviewing court may set aside an agency action if the agency's action is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A)); <u>Douglas v. Independent Living Center of Southern California, Inc.</u>, 565 U.S. 606, 614 (2012) (noting the APA provides for judicial review of final agency action under the standard described in 5 U.S.C. § 706(2)(A)). Reviewing courts "must consider whether the agency 'examine[d] the relevant data and articulate[d] a satisfactory explanation for its action,' while being careful 'not to substitute [their own] judgment for that of the agency.'" <u>Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health and Human Services</u>, 730 F.3d 291, 305 (3d Cir. 2013) (quoting <u>Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.</u>, 463 U.S. 29, 43 (1983)). "An agency action may be arbitrary and capricious 'if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or

is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" Christ the King Manor, Inc., 730 F.3d at 305 (quoting State Farm, 463 U.S. at 43.)

According to BOP Program Statement 4500.11, §14.2:

> The Bureau's authority to operate TRULINCS is found in 18 U.S.C. 4042, which authorizes the Bureau to provide for the safekeeping, care, and subsistence of Federal prisoners. Pursuant to that authority, the CEO prohibits or discontinues its operation, or individual inmate's participation, whenever it is determined to jeopardize the safety, security, or orderly operation of the correctional facility, or the protection of the public and staff.

The BOP's operation of TRULINCS does not conflict with Congressional intent that the BOP provide the safekeeping, care and subsistence of federal prisoners. See Solan v. Zickefoose, 530 F. App'x 109, 111–12 (3d Cir. 2013) (finding Program Statement 5265.13, the predecessor to the more restrictive Program Statement 4500.11, "entirely consistent with § 4042.")

Plaintiff states that he is seeking acknowledgment that the BOP gave him no rational reason for denying him use of TRULINCS. The warden gave the following reasons for denying Plaintiff participation in TRULINCS:

> This is in response to your Request for Administrative Remedy, dated March 7, 2016, in which you request access to the TRULINCS electronic messaging system. You allege your Unit Team improperly applied policy in denying you access as you do not represent any threat to the safe operation of the facility or

> public safety. A review of your record reveals you are serving a 294 month aggregate sentence for Attempted Transportation of Minors with Intent to Engage in Criminal Sexual Activity, Attempt to Travel with Intent to Engage in Illicit Sexual Conduct, and Possession of Visual Depictions of Child Pornography. According to Program Statement, 4500.11 Trust Fund/Deposit Fund Manual, "Inmates whose offense, conduct, or other personal history indicates a propensity to offend through the use of e-mail or jeopardizes the safety, security, orderly operation of the correctional facility, or the protection of the public or staff, should be seriously considered for restriction." Further review of your current offense reveals you communicated via e-mail with an undercover ICE agent who was pretending to operate a website offering international travel with the explicit purpose of offering sex with minors. During the period of June 15, 2010 and July 23, 2010, you and the undercover officer exchanged numerous e-mails negotiating the terms of your trip to engage in sexual activity with an eight year old girl.
>
> Additionally, on May 17, 2004, you were convicted of Attempted Gross Sexual Imposition. Specifically, you were found to have used e-mail to correspond with a girlfriend in an attempt to coerce her into letting you engage in sex with her 10 year old sister.

(First Am. Compl., Attach A, ECF No. 10 at 33.)

The warden gave reasons for excluding Plaintiff from TRULINCS participation consistent with the goal of the program statement in protecting the public from a prisoner's potential misuse of electronic mail. See Solan, 2013 WL 1007665, at *8 (upholding decision to ban prisoner from using TRULINCS based on his computer

expertise and prior disciplinary action for misuse of a BOP computer). Therefore, the warden's denial of Plaintiff's request for TRULINCS participation was not arbitrary and capricious under APA review. Plaintiff failed to state an APA claim.

IV. CONCLUSION

For the reasons discussed above, Plaintiff fails to state a claim under the Fifth Amendment equal protection guarantee, the First Amendment right to freedom of speech and the Administrative Procedures Act. Because amendment of the First Amended Complaint is futile, the Court dismisses the First Amended Complaint with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B); 1915A(b) and 42 U.S.C. § 1997e(c)(1), for failure to state a claim.


DATE: July 30, 2019

                                        s/Renée Marie Bumb
                                        **RENÉE MARIE BUMB**
                                        **UNITED STATES DISTRICT JUDGE**